# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

CHRISTOPHER L. GREENLIEF,  :
        Plaintiff,  :
          :
        v.  :     C.A. No. 14-376ML
          :
CAROLYN W. COLVIN, ACTING  :
COMMISSIONER OF SOCIAL SECURITY,  :
        Defendant.  :

## REPORT AND RECOMMENDATION

Patricia A. Sullivan, United States Magistrate Judge

Complaining primarily of chronic lumbar and cervical spine pain, Plaintiff Christopher Greenlief has filed his second sequential application for disability insurance benefits ("DIB") under 42 U.S.C. § 405(g). The matter is now before this Court on his motion for reversal of the decision of the Commissioner of Social Security (the "Commissioner"), who denied the application. Plaintiff contends that the Administrative Law Judge ("ALJ") failed to evaluate the medical opinions of his primary care physician, Dr. Rajeev Gupta; he also claims that substantial evidence does not support the ALJ's Step Five finding that Plaintiff can perform other work because the ALJ's hypothetical to the vocational expert omitted some of the limitations in the ALJ's Residual Functional Capacity ("RFC") finding.[1] Defendant Carolyn W. Colvin ("Defendant") has filed a motion for an order affirming the Commissioner's decision.

This matter has been referred to me for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Having reviewed the record, I find no legal error and that the ALJ's findings are well supported by substantial evidence. Accordingly, I

---

[1] Residual functional capacity is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting." 20 C.F.R. § 404.1545(a)(1).

recommend that Plaintiff's Motion to Reverse with a Remand for Rehearing of the Commissioner's Final Decision (ECF No. 6) be DENIED and Defendant's Motion for an Order Affirming the Commissioner's Decision (ECF No. 9) be GRANTED.

## I. Background Facts

### A. Plaintiff's Background

Plaintiff was fifty-one years old on August 24, 2011, his alleged onset date. Tr. 89. A high school graduate with a semester of college, Tr. 36, he had worked for thirty years for the State of Rhode Island at the Zambarano Hospital as a manager overseeing the operations of the laundry. Tr. 36-37, 198. His back pain is a longstanding issue; it appears to have been exacerbated by an automobile accident in 1995. Tr. 531. In January 2006, he underwent laminectomy, but the surgery did not appear to alleviate the pain. Tr. 65. Based on his back pain, complicated by asthma, migraine headaches, anxiety and glaucoma, Plaintiff filed his first DIB application on May 7, 2009. Tr. 60, 63. The ALJ denied the application, finding that, although Plaintiff was taking potent opiates for pain control, his spine exhibited no abnormalities and his many activities, including caring for his daughter, preparing simple meals, doing household chores, and attending church and monthly meetings of his Rod & Gun Club, were inconsistent with his claims of pain and restricted functions. Tr. 60-71. The adverse decision issued on August 23, 2011; it concluded that Plaintiff was not disabled through the date of decision. Two weeks later, on September 7, 2011, Plaintiff filed the current DIB application alleging onset on the day following the date of the prior decision. Tr. 16.

The current application is based on Plaintiff's claims of degenerative disc disease in the lumbar and cervical spine, asthma, glaucoma, migraine headaches, anxiety and depression. Tr. 18-20. Only myofascial pain syndrome, back pain and asthma were accepted as severe by the

ALJ.  Tr. 18.  During this period of disability, Plaintiff has lived with his thirty-year-old son and sometimes with his eleven-year-old daughter, who alternates living with her mother.  Tr. 36. There are three dogs in the household and Plaintiff participates in their care.  Tr. 214, 470.  The record indicates that, in addition to caring for himself, his daughter and the dogs, Plaintiff also traveled to Florida for a month to care for his dying mother.  Tr. 522.  While his complaints of back pain and related pain in his foot are persistent in the medical record, the evidence also establishes that he regularly goes to church and the Rod & Gun Club, that he purchased a $1000 crossbow and resumed hunting, and that he does errands, chores and otherwise is helpful around the house.  Tr. 462, 470, 524, 525.

This appeal does not challenge the ALJ's adverse determination regarding asthma, glaucoma, migraine headaches, anxiety or depression.  It is focused exclusively on the weight given by the ALJ to the opinion of his primary care physician regarding back pain, and to the non-exertional limits related to back pain and asthma that he claims the ALJ wrongfully omitted from the vocational hypothetical.  This report and recommendation addresses only Plaintiff's claims of error.

### B.    Relevant Medical History

Since the laminectomy in January 2006, Plaintiff has continued to report severe pain, primarily in his lower back, but also his neck, radiating bilaterally down his legs; he has continued to take opiates for pain.  Tr. 440, 481-96.  During this most recent period of alleged disability, Plaintiff has had a total of four appointments with his primary care doctor, Dr. Rajeev Gupta, although the treating relationship with Dr. Gupta goes back to March 18, 2008.  Tr. 403.

Plaintiff's relevant medical history begins in October 2011 with an appointment with Dr. Gupta for a tick bite.  Tr. 484.  Other than "takes pain meds" and "Musculoskel (+)," there is no

reference to spinal pain. Tr. 484. On November 3, 2011, Plaintiff saw his neurologist, Dr. Aumentado, and complained that his back pain had flared; examination revealed that his spine "exhibited no abnormalities . . . no muscle spasms . . . spinal flexion was normal," and the straight-leg-raising tests were all negative. Tr. 448-50. In December, Plaintiff was back to Dr. Gupta for a cold; other than "Musculoskel(+)," there is no reference to Plaintiff's back. Tr. 483. In February 2012, Dr. Aumentado observed, "[m]aintained on oxycontin . . . oxycodone . . . [s]ymptoms unchanged and symptoms controlled;" on examination, he found pain on motion, but no abnormalities, full range of motion and all straight-leg testing was negative. Tr. 444-46. When Plaintiff next saw Dr. Gupta, in May, he complained of his neck. Tr. 482. On a referral from his podiatrist, Plaintiff saw electro-neurologist, Dr. McGunigle, on June 22, 2012; the EMG revealed no evidence of neuropathy, but confirmed changes in certain spinal muscles, which Dr. McGunigle opined was related to the 2006 surgery; he referred Plaintiff for physical therapy and exercise. Tr. 454. In August 2012, Plaintiff had a "well exam" with Dr. Gupta; no abnormalities were detected. Tr. 481. In September, he returned to Dr. Aumentado, who noted that physical therapy had stopped for August so that Plaintiff could care for his mother in Florida. Tr. 518; see Tr. 522 ("Chris was in Florida for three weeks when his mother was sick"). Plaintiff reported that, "[b]ack pain waxes and wanes" but was exacerbated by standing, bending and lifting more than thirty pounds. Tr. 518. Dr. Aumentado wrote "[s]ymptoms controlled," with abnormalities with gait and in the lumbar spine; the plan remained to continue current medication. Tr. 518-21.

In other record references, Plaintiff is quoted as telling providers that there are times when "he was doing pretty good" and days when "he has no pain at all." Tr. 511. In therapy, he described his activities, including that he had been out "a decent amount," that he values his role as the caregiver to his three dogs and to his daughter, that he has been going to church, that he

went to the rifle range with his son, that he resumed hunting (one of his favorite pastimes) and that he has been doing errands and seeing a few friends.  Tr. 469, 470-71, 475, 524-25.  Similarly, in his function report, Plaintiff confirmed that he cares for his daughter and the dogs, though his son handles the heavy bags of dog food; he prepares simple meals, performs some household chores, does shopping, walks a half mile three to four times a week and enjoys playing with his daughter and grandchildren.  Tr. 212-20.

      **C.**      **Relevant Opinion Evidence**

On December 17, 2012, Dr. Gupta filled out a disability questionnaire, Tr. 526-27, physical and mental RFC evaluations, Tr. 528, 530, and a fatigue and pain questionnaire, Tr. 529.  Based on a four-year treating relationship, Dr. Gupta recorded diagnoses of degenerative disc disease, status-post laminectomy, with severe symptoms of back and neck pain and opined that Plaintiff could not sustain full-time employment.  Tr. 526-27.  For physical limitations, Dr. Gupta indicated that Plaintiff could sit, stand, and walk for no more than one hour each, that he could lift no more than five pounds occasionally, that he could never push, pull, do over-the-shoulder work, bend, squat, or crawl or be exposed to unprotected heights, moving machinery or extreme temperatures.  Tr. 528.  Because of his asthma, Dr. Gupta limited him to only occasional exposure to noise, vibrations, dust and fumes.  Tr. 528.  For mental limitations, Dr. Gupta opined that pain would cause moderately severe limitations in his ability to concentrate, keep pace and be productive in a competitive work setting.  Tr. 529.  Otherwise, Dr. Gupta opined to moderate limitations in activities of daily living, social functioning and attention and concentration and moderately severe limitations in responding to customary work pressures.  Tr. 530.

**II.**      **Travel of the Case**

Plaintiff filed his DIB application on September 7, 2011. Tr. 16, 174-75. His application was denied initially, Tr. 76-88, and on reconsideration, Tr. 89-101. On January 14, 2013, the ALJ held a hearing at which Plaintiff, represented by counsel, a medical expert ("ME") and a vocational expert ("VE") testified. Tr. 32-56. On February 1, 2013, the ALJ issued a decision finding that Plaintiff was not disabled through the date last insured (December 31, 2012). Tr. 16-25. The Appeals Council denied Plaintiff's request for review, Tr. 1-4, rendering the ALJ's decision the Final Decision of the Commissioner. The case is now ripe for judicial review pursuant to 42 U.S.C. § 405(g).

### III. The ALJ's Hearing and Decision

At the hearing Plaintiff testified that he is in constant pain in his lower back and neck, with pain radiating into his lower foot and tingling in his left hand; he described his daily average pain with medication as 6 or 7 out of 10, and said it increases with activity. Tr. 37-39. He testified that he can stand only for a few minutes and can sit for no more than fifteen or twenty minutes. Tr. 39-40. He sleeps poorly and the medications he takes cause nausea and fatigue. Tr. 40. When asked if he had been hunting in the past year, Plaintiff testified that he "went out a couple of times, and I just can't sit in a tree stand anymore." Tr. 41. He drives to church weekly and takes his daughter to the beach at least once a year. Tr. 41.

Dr. Stephen Kaplan testified as an independent medical expert regarding his opinion, based on his review of the medical record including Plaintiff's subjective complaints of pain, that Plaintiff's impairments would limit him to light work. Tr. 45. Dr. Kaplan also opined that Plaintiff's asthma would restrict him from working around dust or allergens. Tr. 44. The VE testified that Plaintiff's past relevant work was medium in exertion and on the lower end of skilled. Tr. 50. The ALJ then asked him whether he agreed with the vocational opinion of the

expert from the prior hearing on available work at the light exertional level with a fume-free, dust-free environment; the VE affirmed the prior opinion that production jobs and office work would be available. Tr. 54. On examination by Plaintiff's counsel, the VE testified that it was borderline whether there would still be work with the addition of both moderately severe limits in the ability to respond to customary work pressure and the risk of missing more than one day of work per month. Tr. 54-55. However, missing two days per month would preclude all work. Tr. 56.

The ALJ issued his decision under the familiar five-step sequential evaluation process, finding at Step One that Plaintiff had not engaged in substantial gainful activity from August 24, 2011, his alleged onset date, through December 31, 2012, his date last insured. Tr. 18. At Steps Two and Three, the ALJ found that Plaintiff's myofascial pain syndrome, degenerative disc disease of the cervical and lumbar spine and asthma constitute severe impairments, but that they do not meet or medically equal the requirements of any Listing. Tr. 18-21. Prior to Step Four, the ALJ determined that Plaintiff retained the RFC to perform light work, in that he can stand, walk, and sit for up six hours in an eight-hour workday and lift up to twenty pounds occasionally and ten pounds frequently; the ALJ added the limits that he can only occasionally balance, stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes and scaffolds. Tr. 21. The RFC accommodated Plaintiff's asthma with the limitation of avoidance of concentrated exposure to fumes, odors, dusts, gases and poor ventilation. Tr. 21. The ALJ's RFC finding is the same as the RFC developed in connection with Plaintiff's prior application. Compare Tr. 21, with Tr. 65.

In reliance on this RFC and the VE's testimony, at Step Four, the ALJ found that Plaintiff could not perform his past work as a laundry supervisor because it is rated as medium in exertion. Tr. 23-24. At Step Five, the ALJ applied Medical-Vocational Rule 202.14, as

amplified by SSR 85-15, 1985 WL 56857 (1985), as a decisional framework. From this foundation, the ALJ found that Plaintiff could perform jobs that existed in significant numbers in the national economy. Tr. 24. Accordingly, the ALJ concluded that Plaintiff was not disabled during the relevant time period. Tr. 25.

## IV.     Issues Presented

Plaintiff's motion for reversal rests on two arguments. First, Plaintiff contends that the ALJ failed properly to evaluate the opinion evidence from Plaintiff's primary care physician, Dr. Gupta. Second, Plaintiff claims that substantial evidence does not support the ALJ's Step Five finding that Plaintiff can perform other work because the ALJ's hypothetical to the VE failed to include all of the limitations in the RFC.

## V.     Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – that is, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999). Once the Court concludes that the decision is supported by substantial evidence, the Commissioner must be affirmed, even if the Court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); see also Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981).

The determination of substantiality is based upon an evaluation of the record as a whole. Brown, 71 F. Supp. 2d at 30; see also Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). Thus, the Court's role in reviewing the Commissioner's decision is limited. Brown, 71 F. Supp. 2d at 30. The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner. Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)). "[T]he resolution of conflicts in the evidence is for the Commissioner, not the courts." Id. at 31 (citing Richardson v. Perales, 402 U.S. 389, 399 (1971)). A claimant's complaints alone cannot provide a basis for entitlement when they are not supported by medical evidence. See Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 20-21 (1st Cir. 1986); 20 C.F.R. § 404.1529(a).

The Court must reverse the ALJ's decision on plenary review, if the ALJ applies incorrect law, or if the ALJ fails to provide the Court with sufficient reasoning to determine that the law was applied properly. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145-46 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) (citing Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985)).

The Court may remand a case to the Commissioner for a rehearing under Sentence Four of 42 U.S.C. § 405(g); under Sentence Six of 42 U.S.C. § 405(g); or under both sentences. Jackson v. Chater, 99 F.3d 1086, 1097-98 (11th Cir. 1996).

To remand under Sentence Four, the Court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim.  Seavey, 276 F.3d at 9; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).  Where the Court cannot discern the basis for the Commissioner's decision, a Sentence Four remand may be appropriate to allow an explanation of the basis for the decision.  Freeman v. Barnhart, 274 F.3d 606, 609-10 (1st Cir. 2001).  On remand under Sentence Four, the ALJ should review the case on a complete record, including any new material evidence.  Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council).  After a Sentence Four remand, the Court enters a final and appealable judgment immediately, and thus loses jurisdiction.  Freeman, 274 F.3d at 610.

In contrast, Sentence Six of 42 U.S.C. § 405(g) provides:

> The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

42 U.S.C. § 405(g).  To remand under Sentence Six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level.  See Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 139-43 (1st Cir. 1987).

With a Sentence Six remand, the parties must return to the Court after remand to file modified findings of fact.  Jackson, 99 F.3d at 1095 (citing Melkonyan v. Sullivan, 501 U.S. 89,

98 (1991)). The Court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. Id.

## VI. **Disability Determination**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 416(I); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-1511.

### A. **Treating Physicians and Other Sources**

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there are good reasons to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(c). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. Konuch v. Astrue, No. 11-193L, 2012 WL 5032667, at *4-5 (D.R.I. Sept. 13, 2012); 20 C.F.R. § 404.1527(c)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275-76 (1st Cir. 1988). The ALJ's decision must articulate the weight given, providing "good reasons" for the determination. See Sargent v. Astrue, No. CA 11–220 ML, 2012 WL 5413132, at *7-8, 11-12 (D.R.I. Sept. 20, 2012) (where

ALJ failed to point to evidence to support weight accorded treating source opinion, court will not speculate and try to glean from the record; remand so that ALJ can explicitly set forth findings).

When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(c). A treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(c)(2). If a treating source is not accorded controlling weight, the ALJ must apply the factors listed in 20 C.F.R. § 404.1527(c). As SSR 96-2p provides:

> The notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188 (July 2, 1996). The regulations confirm that, "[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." 20 C.F.R. § 404.1527(c)(2). However, where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).

A treating source who is not a licensed physician or psychologist[2] is not an "acceptable medical source."  20 C.F.R. § 404.1513; SSR 06-03p, 2006 WL 2263437, at *2 (Aug. 9, 2006). Only an acceptable medical source may provide a medical opinion entitled to controlling weight to establish the existence of a medically determinable impairment.  SSR 06-03p, 2006 WL 2263437, at *2.  An "other source," such as a nurse practitioner or licensed clinical social worker, is not an "acceptable medical source," and cannot establish the existence of a medically determinable impairment, though such a source may provide insight into the severity of an impairment, including its impact on the individual's ability to function.  Id. at *2-3.  In general, an opinion from an "other source" is not entitled to the same deference as an opinion from a treating physician or psychologist.  Id. at *5.  Nevertheless, the opinions of medical sources who are not "acceptable medical sources" are important and should be evaluated on key issues such as severity and functional effects, along with other relevant evidence in the file.  Id. at *4.

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527(d).  The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity ("RFC"), see 20 C.F.R. §§ 404.1545-1546, or the application of vocational factors because that ultimate determination is the province of the Commissioner.  20 C.F.R. § 404.1527(d); see also Dudley v. Sec'y of Health & Human Servs., 816 F.2d 792, 794 (1st Cir. 1987) (per curiam).

### B.       The Five-Step Evaluation

---

[2] The regulations recognize other categories of providers as acceptable medical sources for certain impairments; for example, a licensed optometrist is acceptable for measurement of visual acuity and visual fields.  SSR 06-03p, 2006 WL 2263437, at *1.

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. § 404.1520. First, if a claimant is working at a substantial gainful activity, the claimant is not disabled. Id. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled. Id. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled. Id. § 404.1520(d). Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled. Id. § 404.1520(e)-(f). Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled is warranted. Id. § 404.1520(g). Significantly, the claimant bears the burden of proof at Steps One through Four, but the Commissioner bears the burden at Step Five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant must prove the existence of a disability on or before the last day of insured status for the purposes of disability benefits. 42 U.S.C. § 416(i)(3); Deblois, 686 F.2d at 79. If a claimant becomes disabled after loss of insured status, the claim for disability benefits must be

denied despite disability.  Cruz Rivera v. Sec'y of Health & Human Servs., 818 F.2d 96, 97 (1st Cir. 1986).

### C.    Capacity to Perform Other Work

Once the ALJ finds that a claimant cannot return to the prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the local or national economy.  Seavey, 276 F.3d at 5.  To meet this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant.  Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989).  This burden may sometimes be met through reliance on the Medical-Vocational Guidelines (the "grids").  Seavey, 276 F.3d at 5.  Exclusive reliance on the grids is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors.  Id. (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).  Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given RFC or when a claimant has a non-exertional impairment that significantly limits basic work skills.  Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert.  Heggarty v. Sullivan, 947 F.2d 990, 996 (1st Cir. 1991).  It is only when the claimant can clearly do unlimited types of work at a given RFC that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.  See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981).  In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given RFC indicated by the exertional limitations. Merola v. Astrue, C.A. No. 11-536A, 2012 WL 4482364, at *5 (D.R.I. Sept. 26, 2012).

**VII.** **Application and Analysis**

    **A.** **ALJ's Evaluation of Dr. Gupta's Opinion**

Plaintiff contends that the ALJ failed properly to evaluate the medical opinions of his primary care physician, Dr. Gupta.

Plaintiff's primary argument is grounded in the ALJ's description of Dr. Gupta as a treating source who had effectively opined that Plaintiff cannot work:

> As for the opinion evidence, the claimant's primary care provider [Dr. Gupta] . . . ha[s] opined that the claimant cannot sustain full time employment due to pain (Exhibit B23F, B24F).

Tr. 23. Plaintiff asserts that this sentence may fairly be interpreted as error in that it means that the ALJ correctly discounted Dr. Gupta's opinion that Plaintiff cannot work, which is a matter reserved to the Commissioner, 20 C.F.R. § 404.1527(d), but then improperly ignored the balance of Dr. Gupta's opinion, which established specific exertional and non-exertional limitations that the ALJ should have incorporated into his RFC finding. In arguing that this error is not harmless, Plaintiff points to Dr. Gupta's opinions that Plaintiff could neither stand nor sit for more than an hour and could lift no more than five pounds as likely precluding all work.

This argument is not well founded. First, in discussing Dr. Gupta's opinion, the ALJ specifically referenced the Exhibit (B23F), which incorporates all of the forms that Dr. Gupta completed; it constitutes the entirety of his evaluation of Plaintiff. This reference permits the fair inference that, far from ignoring most of Dr. Gupta's opinions, the ALJ was evaluating everything contained in the Exhibit. See N.L.R.B. v. Beverly Enters.-Mass., 174 F.3d 13, 26 (1st Cir. 1999) ("An ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party."). Further, when the cumulative effect of Dr. Gupta's extreme limitations are considered, it is clear that they lead inexorably to the

conclusion that Plaintiff cannot work,[3] so that the ALJ's statement that Dr. Gupta opined that

Plaintiff cannot sustain full time employment, holistically read, is a cumulative reference to each

of the components of the opinion, as well as to the conclusory statement on the ultimate issue.

Put differently, by referring to Dr. Gupta's opinion as one that leads to the conclusion that the

claimant cannot sustain full-time employment, the ALJ was effectively summarizing the overall

impact of the restrictions contained within that opinion. The fact that the ALJ did not separately

list each component of the opinion does not compel the interpretation that he did not evaluate it

in its entirety. See Rodriguez v. Sec'y of Health & Human Servs., 915 F.2d 1557, at *1 (1st Cir.

1990) (per curiam) ("An ALJ is not required to expressly refer to each document in the record,

piece-by-piece."); accord Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 8 (1st

Cir.1982) (finding no merit in claim that ALJ did not specifically discuss doctor's report,

because ALJ quoted from other evidence that accurately summarized the contents of that report).

Plaintiff also argues that the ALJ erred in failing adequately to explain the reason for

discounting the weight given to Dr. Gupta's opinion. This argument stumbles on the ALJ's

explanation that Dr. Gupta's limitations are "not supported by the longitudinal medical record

which indicates that the claimant's [sic] suffers from only intermittent symptoms." Tr. 23. It

founders completely on the ALJ's clear and thorough analysis of the underlying facts supporting

this conclusion. Tr. 22. This is not a stretch – the ALJ's thorough decision provides more than

ample support for his reason for discounting the weight afforded to Dr. Gupta's opinion. See

Tetreault v. Astrue, 865 F. Supp. 2d 116, 124 (D. Mass. 2012) (in rejecting treating physicians'

opinion ALJ commits no error even with reasons that are based on discussion of only select

factors) (citing Morales v. Comm'r of Soc. Sec., 2 F. App'x 34, 36 (1st Cir. 2001)); see also

---

[3] If accepted at face value, Dr. Gupta's opinion that Plaintiff can walk, sit and stand for no more than one hour each, with no indication that he could do more in the course of a single workday, compels the conclusion that he is not even capable of sedentary work.

Green v. Astrue, 588 F. Supp. 2d 147, 155 (D. Mass. 2008) (ALJ's failure to go through each individual factor listed in regulation does not require remand so long as the ALJ's decision and reasoning are "sufficiently clear").

Unpacking the ALJ's analysis begins with his finding that Dr. Gupta's limitations clash with the record evidence establishing that Plaintiff "suffers from only intermittent symptoms;" for example, the ALJ pointed to Plaintiff's own claim to Dr. Aumentado that his back pain "waxes and wanes" and to the podiatrist that, some days, he "has no pain at all." Tr. 511, 518-20. The ALJ also correctly noted that Dr. Gupta's opinion regarding Plaintiff's inability ever to lift more than five pounds is contradicted by Plaintiff's report to Dr. Aumentado that his back pain was exacerbated only when he lifted thirty pounds. Tr. 518. Similarly, the ALJ properly focused on Plaintiff's ability to travel to Florida and stay for three weeks to care for his ailing mother, Tr. 522, as inconsistent with Dr. Gupta's opinion that Plaintiff is unable to sit for more than an hour. Finally, the ALJ found that Plaintiff's attendance at meetings at his Rod & Gun club, coupled with his plan to resume hunting, established the kind of strenuous activity that is completely inconsistent with Dr. Gupta's limitations. Tr. 522.

Based on the foregoing, I find that the ALJ did not ignore any aspect of Dr. Gupta's opinion, but rather properly considered it in its entirety. I further find that he made a well-supported decision to afford it little weight in reliance on substantial evidence that its limitations are inconsistent with the medical evidence. There is no error. I recommend that this Court affirm the ALJ's determination.

**B.      ALJ's Step Five Determination**

Plaintiff argues that the ALJ's error in framing the hypothetical question posed to the VE compels the conclusion that the Commissioner's Step Five burden of proving that Plaintiff can

perform other work has not been sustained.  This argument is based on the legal principle that, at

Step Five, the burden shifts to the Commissioner to produce evidence of work Plaintiff can

perform within the constraints of his age, RFC and vocational profile.  See Seavey, 276 F.3d at 5.

The claim of error derives from the following testimony by the VE:

> Q: Mr. Murgo, the light jobs taken administrative notice up (sic) by the secretary
> would there be a significant number with a fume free, dust free and the VE at the
> last hearing said, yes, production jobs, 4,800, bench assembly hand packer, officer
> worker, 4,800.  Would you agree with that?
>
> A: Yes.

Tr. 53-54.  Because this hypothetical omits the limitations on climbing ramps, ladders, ropes and

scaffolds, balancing, stooping, kneeling, crouching, and crawling, all of which are included in

the ALJ's RFC, Tr. 21, Plaintiff contends that the ALJ was not entitled to rely on the VE's

response.  That this omission amounts to error requiring remand, Plaintiff argues, is confirmed

by the ALJ's Step Five finding, which concludes:

> Through the date last insured, if the claimant had the residual functional capacity
> to perform the full range of light work, considering the claimant's age, education,
> and work experience, a finding of "not disabled" would be directed by Medical-
> Vocational Rule 202.14.  However, the additional limitations had little or no
> effect on the occupational base of unskilled light work.  A finding of "not
> disabled" is therefore appropriate under the framework of this rule.

Tr. 24.  Focusing on the ALJ's penultimate sentence – "the additional limitations [only

occasional climbing ramps, stairs, ladders, ropes, and scaffolds, balancing, stooping, kneeling,

crouching, and crawling] had little or no effect on the occupational base of unskilled light work"

– and asserting that the ALJ lacked support for the sentence, Plaintiff concludes that the ALJ's

Step Five finding is not supported by substantial evidence.

This argument misses the point.  In this case, at Step Five, the ALJ did not rely on the

VE's response to a hypothetical; rather, he expressly and explicitly relied on the decisional

framework established by SSR 85-15 and the Medical Vocational Rule 202.14, 20 C.F.R. Part 404, Subpart P, Appendix 2 § 202.14.  Such use of the Medical-Vocational Rules is appropriate where "the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule."  20 C.F.R. Part 404, Subpart P, App. 2 § 200.00(a).  The Medical-Vocational Rules represent administrative notice taken by the Commissioner of the existence of unskilled work in significant numbers at various exertional levels for individuals meeting certain medical and vocational profiles.  See id. § 200.00(b); see also 20 C.F.R. § 404.1566(d).  Moreover, when a claimant's RFC includes additional non-exertional limitations, as Plaintiff's does, the ALJ may still rely on the Medical-Vocational guidelines to sustain the Commissioner's burden of proof at Step Five as long as the non-exertional limitations do not significantly affect the claimant's ability to perform the full range of jobs at the relevant exertional level.  See Heggarty, 947 F.2d at 996; Ortiz, 890 F.2d at 524; see also Calabrese v. Astrue, 358 F. App'x 274, 276 (2d Cir. 2009).  To determine whether a specific non-exertional limit has "little or no effect on the occupational base for unskilled light work," the ALJ properly turned to SSR 85-15, which was promulgated for that purpose.  SSR 85-15 specifies the work-related impact of each of the non-exertional limitations at issue here: for occasional climbing, it provides that such limits "would not ordinarily have a significant impact on the broad world of work;" for occasional stooping and crouching, it provides that the limits leave the sedentary and light occupational base virtually intact; and for crawling and kneeling, it provides that they are limitations "of little significance in the broad world of work."  SSR 85-15, 1985 WL 56857, at *6-7.  SSR 85-15 also addresses the impact of environmental limitations on a claimant otherwise able to perform the full range of light work and provides that the impact would be minimal because "most job environments do not involve great . . . amounts"

of such irritants.  Id. at *8.  In short, SSR 85-15, to which the ALJ specifically referred in his

Step Five finding, evaluates the impact of each of the non-exertional limits in Plaintiff's RFC,

and, as to each, provides support for the ALJ's Step Five conclusion that they are "limitations

[that] had little or no effect on the occupational base of unskilled work."  See Lassor v. Astrue,

No. 06-176, 2007 WL 2021924, at *4 (D. Me. July 11, 2007) (limitation to "only occasionally

performing postural activities, no climbing ladders, ropes, or scaffolds . . . does not significantly

erode the ability to perform sedentary [work]," and allows for direct application of the Medical-

Vocational guidelines); Swanick v. Apfel, No. 99-293-M, 2000 WL 1507421, at *7 (D.N.H. July

25, 2000) (ability to perform "all postural functions at least occasionally would leave the light

and sedentary occupational bases largely intact").

To gild the lily, the Commissioner correctly points out that the ALJ asked the VE if he

agreed with vocational testimony elicited during the hearing on Plaintiff's prior claim, when a

vocational hypothetical was posed that did include all of the limitations in an identical RFC.  Tr.

54.  By answering in the affirmative, the current VE effectively testified that Plaintiff's RFC,

which is unchanged from that found by the prior ALJ, would leave him able to work at specified

jobs, including bench assembly hand packer and officer worker.  Tr. 54.  Although the ALJ did

not use this testimony, relying instead on the Medical-Vocational guidelines as amplified by SSR

85-15, it remains in the record as additional supporting evidence for the ALJ's Step Five finding

that there are significant jobs in the national economy that Plaintiff could perform.

I find no error in the ALJ's Step Five finding and recommend that this Court affirm the

decision that other work is available.

## VIII.  Conclusion

I recommend that Plaintiff's Motion to Reverse with a Remand for Rehearing of the Commissioner's Final Decision (ECF No. 6) be DENIED and Defendant's Motion for an Order Affirming the Commissioner's Decision (ECF No. 9) be GRANTED.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
July 15, 2015